
# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ALABAMA
### MOBILE DIVISION

| | |
|---|---|
| **FRANKENMUTH MUTUAL INSURANCE COMPANY,** ) ) ) **Plaintiff,** ) v. ) ) ) **GATES BUILDERS, INC., KENNETH J. GATES, AND RESORT CONFERENCE CENTRE, GULF SHORES PLANTATION CONDOMINIUM ASSOCIATION, INC.** ) ) ) ) ) ) ) ) **Defendants.** ) | **CIVIL ACTION NO.:** |

## COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW Frankenmuth Mutual Insurance Company ("FMIC") and hereby files this action for declaratory relief pursuant for Rule 57, Fed. R. Civ. Proc. and 28 U.S.C.A. §2201, et seq. and 28 U.S.C.A. §§1332, 1333 and states as follows:

1. FMIC is a corporation engaged in the business of insurance and is incorporated under the laws of the state of Michigan with its principal place of business in Frankenmuth, Michigan. FMIC is a citizen of the State of Michigan for purposes of diversity jurisdiction. FMIC is licensed to conduct business in the State of Alabama.

2. Gates Builders, Inc. ("Gates") is a domestic corporation incorporated, organized, and existing under the laws of Alabama with its principal place of business in Foley, Baldwin County, Alabama. Per the Alabama Secretary of State its registered agent in Alabama is Kenneth J. Gates and its registered address for service of process is Hwy 14, Aliceville, Alabama 35442. Gates is a resident citizen of the State of Alabama for purposes of diversity jurisdiction.

3. Kenneth J. Gates is an individual person who resides in Gulf Shores, Alabama. Kenneth J. Gates is a resident citizen of the State of Alabama for purposes of diversity jurisdiction.

4. Resort Conference Centre, Gulf Shores Plantation Condominium Association, Inc. ("Association") is a not for profit corporation organized and existing under the laws of the State of Alabama. The Association has its principle place of residency at 400 Plantation Road, Gulf Shores, Alabama 36542. According to the Alabama Secretary of State, the Association's registered agent of process is Crystal Nolan and it is to be served at 400 Plantation Road, Gulf Shores, Alabama 36542. Thus, the Association is a resident citizen of the State of Alabama for purposes of diversity jurisdiction.

## VENUE AND JURISDICTIONAL ALLEGATIONS

5. This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 1332, and the Declaratory Judgment Act, 28 U.S.C. § 2201, because the amount in

controversy exceeds $75,000.00, exclusive of costs and interest, and because there exists complete diversity of citizenship among the Plaintiff and the Defendants.

6. Courts traditionally have calculated the amount in controversy limit, as contemplated by 28 U.S.C.A. § 1332, in the following manner:

> In a declaratory judgment action, the amount in controversy is the monetary value of the object of the litigation from the plaintiff's perspective. The plaintiff satisfies the amount in controversy requirement by claiming a sufficient sum in good faith. Where, as here, an insurer seeks a determination that it has no duty to defend a separate, underlying lawsuit, the court may take into account not only the recovery sought in the underlying suit, but also the pecuniary value of the [insurer's] obligation to defend the separate lawsuit. (citations omitted)

Owners Ins. Co. v. Bryant, 2001 WL 50488 (M.D. Ga. 2006).

7. This declaratory judgment action seeks a judicial determination of FMIC's obligations to defend and indemnify Mr. Gates and Gates under a policy that affords Commercial General Liability and Umbrella coverage that was issued to Gates in relation to litigation styled Resort Conference Centre, Gulf Shores Plantation Condominium Association vs. Gates Builders, Inc. and Kenneth J. Gates, among others, Civil Action No. CV-2020-900896, pending in the Circuit Court of Baldwin County, State of Alabama ("Underlying Litigation").[1]

8. On July 26, 2014, Gates entered into a contract with Resort Conference Center Owners Association to perform exterior and structural

---

[1] A copy of the underlying Complaint is attached hereto as Exhibit 1.

rehabilitation work at Resort Conference Centre Condominium ("Condo") in Gulf Shores, Alabama. The contract amount was for $2,305,000,000. The work was completed in June 2015. The underlying plaintiffs contend that this work was done incorrectly and must be redone.

9. Gates became aware of alleged damage in September 2019, when he was contacted about sagging decks. He shored up the sagging decks and quoted a repair cost.

10. On April 6, 2020, Gates submitted an application for insurance with FMIC. The following questions were answered:

> "Any past losses on claims relating to sexual abuse or molestation allegations, discrimination or negligent hiring?"   NO
>
> "In addition to disclosed claim history, has the applicant paid any direct settlements or does the applicant have any pending suits or anticipated legal action related to the applicant's situation, activities or products?"   NO

11. Notwithstanding these responses, FMIC recently discovered that on September 12, 2018, Edgewater West Condominium Owners' Association, Inc. filed suit against Gates Builders, Inc. The complaint alleges that on July 28, 2016, it entered in to a contract with Gates to (1) replace windows and doors, (2) repair/restore/recover exterior cladding and (3) install horizontal coating system. The complaint alleges the following causes of action against Gates: (1) breach of contract and (2) negligence. As to the negligence claim, it alleges that Gates failed

to properly supervise personnel which resulted in the following damages: (1) scratching or etching of glass, (2) overspray of coating materials and/or stains and (3) damage to interior components and finishes of the building, including damage to carports, woodwork, trim, etc. On October 2, 2018, Gates filed an answer and counterclaim.

12. On October 16, 2018, Gates filed suit against Energy Technical, LLC. On January 3, 2019, Energy Technical, LLC filed a counterclaim against Gates. The counterclaim alleges that "during the course of the project, certain modifications, additions and/or expansions to the support of work of [Energy] were caused by errors and omissions by [Gates]," and others. The gist of the counterclaim is that Energy contends that Gates owes it additional funds. On September 20, 2019, Gates answered the counterclaim.

13. On July 30, 2020, Resort Conference Centre, Gulf Shores Plantation Condominium Association ("Association") filed suit against Gates, Kenneth J. Gates, among others, alleging that the construction work performed by Gates from 2014 – 2015 was faulty, resulting in damage to the Association. The complaint alleges that damages caused by Gates were discovered in November of 2019 and in June of 2020.

14. The Complaint alleges the following causes of action:

- Negligently and/or wantonly failed to properly supply, install, inspect, construct the structure in accordance with

> plans, etc.; supervise and/or inspect the construction; install materials; and, to determine whether materials employed complied with code.
> - Breach of warranty.
> - Breach of contract/third party beneficiary.
> - Misrepresentation/suppression as follows: improper installation, construction and/or specifications of claddings and flashings which would result in the propensity of the weather envelopes of the buildings to permit moisture intrusion; exterior cladding materials, flashings and windows were improperly specified, installed and/or constructed; sealants, flashings and balconies were improperly installed which contributed to water intrusion.
> - Magnuson-Moss Warranty Act violation.

Generally, under each addendum clause, the Association seeks compensatory and punitive damages.[2] The following specific damages are claimed:

> - Association will be caused to expend substantial sums to correct and/or repair defects in the construction and/or replace non-suitable or noncompliant materials; and,
> - To expend substantial sums to correct and/or repair consequential damages to the buildings and damage to other property resulting from said defects.

15. On April 7, 2020, FMIC issued to Gates a Commercial General Liability ["CGL"] policy, number CPP 666135 (hereinafter referred to as The "Policy"). The CGL Policy provides a general liability coverage form with limits of $1,000,000 for each occurrence and an aggregate limit of $2,000,000. The CGL Policy also provides an umbrella coverage form with limits of $2,000,000 for each

---

[2] Under the Magnuson-Moss Warranty Act Claim, Count Six, the Association also seeks attorney fees.

occurrence and an aggregate of $2,000,000. See Policy attached hereto as Exhibit 2.

16. FMIC is currently providing a defense to Gates and Kenneth J. Gates in the underlying litigation under a full reservation of rights. FMIC will incur defense costs, including attorney fees, in defense of Gates and Kenneth J. Gates in the Underlying Litigation, which will exceed the jurisdictional threshold amount. See Stonewall Ins. Co. v. Lopez, 544 F.2d 198, 199 (5th Cir. 1976) (court considered policy limit together with the cost of defense to determine whether the amount in controversy exceeded the jurisdictional amount). In light of the amount in controversy in the Underlying Litigation, coupled with the defense costs likely to be incurred in the defense of the Underlying Litigation, the amount in controversy requirement is met for purposes of diversity jurisdiction.

17. Venue in this suit is appropriate in the United States District Court for the Southern District of Alabama pursuant to 28 U.S.C.A. § 1391 because FMIC, Gates, Kenneth J. Gates and the Association conduct business in the Southern District of Alabama, and Gates', Kenneth J. Gates' and the Association's contacts in the Southern District of Alabama are sufficient to subject them to personal jurisdiction in this Court.

## COUNT I

17.  The Policy provides no coverage for any loss known by Gates and/or Kenneth J. Gates to have occurred prior to the inception of the Policy. Gates is deemed to have knowledge of the loss if it knew that it had occurred, in whole or in part.

18.  Per the Policy, "bodily injury" or "property damage" will be deemed to have been known at the earliest time the insured:

> *(2)   Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or*
> *(3)   Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

19.  In paragraph 14 of its complaint, the Association states as follows:

> *14.   On or about November 1, 2019, the balcony of Unit 1341 at Resort Conference Centre Condominium began to sag requiring immediate emergency shoring to avoid a complete collapse of the balcony. Shortly thereafter, it was discovered by the Plaintiff that the balconies and adjacent components of the building were not properly constructed and that the waterproofing materials and flashings were not properly installed and incorporated into the structure. Upon further investigation it was discovered that the majority, if not all the balconies, were constructed in an improper manner, thus, causing substantial deterioration of the building components which will require significant remediation.*

It is beyond dispute that this portion of the complaint clearly states that damage(s) was discovered in 2019. The Policy issued by FMIC was not obtained until April

8

4, 2020 – several months after the damage was discovered. Thus, the Policy provides no coverage for all damages discovered prior to April 4, 2020.

## COUNT II

20. The Policy provides no coverage for any loss known by Gates and/or Kenneth J. Gates to have occurred prior to the inception of the Policy. Gates is deemed to have knowledge of the loss if it knew that it had occurred, in whole or in part.

21. Per the Policy, "bodily injury" or "property damage" will be deemed to have been known at the earliest time the insured:

> *(2) Receives a written or verbal demand or claim for damages because of "bodily injury" or "property damage"; or*
> *(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.*

22. In paragraph 15 of its complaint, the Association states as follows:

> *15. On or about June 11, 2020, following a storm event, it was discovered that a portion of the Hardy siding on building number 6 had been damaged and required repair. During the repair it was discovered that the flashings and sealants at the windows and adjacent building components were not properly installed and/or constructed, thereby allowing water intrusion into the cavity of the exterior building envelope causing substantial deterioration of the underlying substrate. It was further discovered at the time that the roof to wall intersections were not properly constructed and the flashing materials were either omitted or improperly installed, thereby causing additional water intrusion into the cavity of the building envelope resulting in substantial consequential damage to the structures.*

The alleged damages discovered in 2020 are a continuation of the damage(s) discovered in 2019. The Policy issued by FMIC was not obtained until April 4, 2020 – several months after the damage was discovered. Thus, the Policy provides no coverage for all damages.

## COUNT THREE

23. Specific claims asserted in the Underlying Litigation are not covered under the Policy for the following reasons:

24. The negligence count is comprised of the following specific claims:

a. Negligent failure to properly supply, install, inspect, construct and/or specify components of the structure in accordance with the plans, specifications, the applicable building code(s), and/or architectural, engineering and/or industry standards, to include, but not limited to, failure to properly supply, install, inspect construct and /or specify flashing, exterior claddings, coatings, sealants, roofing components and systems, moisture barriers, windows and balconies, balcony framing and/or waterproofing and flashing components;

b. Negligent failure to supervise and/or inspect the construction of the condominium buildings to ensure appropriate selection of, and/or use of, materials, and/or implementation of appropriate construction methods and/or installation(s);

c. Negligent installation and/or application of materials utilized in the construction of the condominium structures;

d. Negligent inspection of, and/or installation of, building components;

e. Negligent failure to determine whether materials, designs and/or systems employed in the construction complied with the applicable code(s), specifications and/or industry standards.

  f.  Negligent and/or reckless misrepresentation, through course of conduct, as to specification compliance of the buildings and/or their components.

This complaint clearly alleges loss that is the defective work of Gates, and loss resulting from the defective work of Gates. In paragraph 20, the Association first claims that it will be forced to correct and/or repair the defective work of Gates. See Complaint at ¶20(a). The Association then avers that it will be forced to correct and/or repair consequential damage resulting from Gates' defective work. See Complaint at ¶20(b). To the extent that the negligence claim is based upon faulty workmanship, there is no occurrence and the Policy provides no coverage. Nationwide Mutual Fire Ins. Co. v. Hopper, 2007 WL 9712063 at *6 (N.D. Ala. March 20, 2017).

  25.  Likewise, the allegations in the wantonness count mirror those of the negligence count. The wantonness count reads as follows:

  a)  Wanton and/or reckless failure to properly supply, install, inspect, construct and/or specify components of the structure in accordance with the plans, specifications, the applicable building code(s), and/or architectural, engineering and/or industry standards, to include, but not limited to, failure to properly supply, install, inspect construct and /or specify flashing, exterior claddings, coatings, sealants, roofing components and systems, moisture barriers, windows and balconies, balcony framing and/or waterproofing and flashing components;

    b.    Wanton and/or reckless failure to supervise and/or inspect the construction of the condominium buildings to ensure appropriate selection of, and/or use of, materials, and/or implementation of appropriate construction methods and/or installation(s);

    c.    Wanton and/or reckless installation and/or application of materials utilized in the construction of the condominium structures;

    d.    Wanton and/or reckless inspection of, and/or installation of, building components;

    e.    Wanton and/or reckless failure to determine whether materials, designs and/or systems employed in the construction complied with the applicable code(s), specifications and/or industry standards.

    f.    Wanton and/or reckless misrepresentation, through course of conduct, as to specification compliance of the buildings and/or their components.

The Policy includes the "'Your Work' Coverage Extension" endorsement. The "Your Work" Coverage Extension endorsement to the Policy states that the Policy does not cover "property damage" caused by "your work" that results from wanton conduct. To the extent count two of the complaint alleges wanton conduct resulting from "your work", the Policy provides no coverage.

    26.    The Association alleges in count three of its complaint that Gates warranted that the plans, specifications and exterior structural rehabilitation work performed by it and/or the components utilized during the rehabilitation scope of work were suitable for their separate and/or collective intended uses, met the

applicable plans and specifications, standards, building codes and installation instructions and/or met minimum standards of industry usage for this application. The Policy excludes coverage for any breach of warranty related to the goods and products used by Gates. The Policy defines "your product" in pertinent part as follows:

> 21. *"Your product":*
>
>  a. *Means*
>
>  (1) *Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:*
>
>  (a) *Your;*
>  (b) *Other trading under your name; or*
>  (c) *A person or organization whose business or assets you have acquired;*
>
>  b. *Includes:*
>
>  (1) *Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product";*

Coverage for "your product" is excluded pursuant to the following express exclusion:

> 2. *EXCLUSIONS*
>
>  *This insurance does not apply to:*
>
>  k. *Damage To Your Product*

> *"Property damage" to "your product" arising out of it or any part of it.*

The Complaint in this action makes claims for breach of the warranty of habitability, merchantability and express warranty. Such claims do not constitute an occurrence. In addition, the "your work" and the "your product" exclusions also apply with respect to property damages in that their definitions contain references to warranties as to the work product. ("Warranties are representations made at any time with respect to the fitness, quality, durability, performance or use of "your work" [or "your product"] . . . )." The "your work" and "your product" and "contractual liability" exclusions provide an additional basis for finding that there is no coverage for the breach of warranty claims.

27. Article 7.2 of the contract covering the construction project states that the contract documents shall not be construed as creating a contractual relationship of any kind, "(3) between any persons or entities other than the Owner and Contractor. There are, therefore, no third party beneficiaries to this contract.

This count of the complaint states that the defendants:

> *"... each by express and/or implied warranty, including but not limited to, warranties contained within the AIA (Exhibit "A") warranted that the plans, specifications and exterior structural work performed by these DEFENDANTS and/or the components utilized during the rehabilitation scope of work were suitable for their separate and/or collective intended uses, met the applicable plans and specifications, standards, building*

14

>  *codes and installation instructions and/or met the minimum standards of industry usage for this application."*

This count thereby alleges breach of warranties as to both the quality of the work performed by Gates and Gates' product. There is Alabama precedent to the effect that a breach of contract claim is not covered under a commercial general liability policy, because such policies were never intended to protect the insured from such a claim.

28. The fifth count of the complaint is designated as a claim for misrepresentation and/or suppression. Misrepresentation and suppression, standing alone, cannot cause property damage. United States Fidelity & Guarantee Co. v. Warwick Development Co., 446 So. 2d 1021 (Ala. 1984); State Farm Fire and Casualty Co. v. Gwin, 658 So. 2d 426 (Ala. 1995); Assurance Co. of America v. Admiral Ins. Co., 2011 WL 1897589 (S.D. Ala. May 18, 2011). Furthermore, misrepresentation is not an occurrence which causes property damage. Allstate Ins. Co. v. Ignatius, 2020 WL 1853051 at *4 (S.D. Miss. Jan. 17, 2020); Nationwide Mut. Ins. Co. v. Martinelli, 2017 WL 11306152 at *6 (N.D. W.V. June 7, 2017); Safeco Ins. Co. of Am. v. Andrews, 915 F.2d 500, 502 (9th Cir. 1990) (holding that a misrepresentation that materially impacts the value of a property does not constitute "damage to tangible property," but only economic loss that falls outside

the scope of an insurance policy). Thus, such claims are not covered under the Policy.

29. In the final count of the complaint, the Association states that Gates violated the Magnuson-Moss Warranty Act in that it has, "either deceptively issued warranties and/or failed to repair the defects". Such claims do not constitute an occurrence under the Policy.

30. Lastly, any economic damages being claimed by the Association do not constitute "property damage." Therefore, any alleged economic damages by the Association relative to the work would not be characterized as "property damage" and are not covered under the Policy.

**WHEREFORE, PREMISES CONSIDERED**, FMIC seeks a declaration from this Court as follows:

- A. That a bona fide justifiable controversy exists between the parties which should be resolved;

- B. That the operative language in the FMIC Policy as endorsed is clear and unambiguous;

- C. That the claims in the Underlying Litigation are expressly not covered and/or excluded and there is no coverage under the Policy and thus no defense or indemnity afforded under the Policy to Gates and/or Kenneth J. Gates for the claims made against them or attributed to them in the Underlying Litigation; and,

- D. That FMIC is relieved from any obligations to defend and/or indemnify Gates and/or Kenneth J. Gates due to the fact that the damages arose prior to the inception of the Policy.

E.  Granting FMIC such other, further and different relief to which it may be entitled.

              Respectfully submitted,

              /s/ Kofi 3. Clement
              Kofi L. Clement (ASB-5125-L72K)
              Attorney for Frankenmuth Mutual
              Insurance Company

OF COUNSEL
Klasing, Williamson, Burke & Bright, P.C.
1601 Providence Park
Birmingham, Alabama 35242
Telephone: (205) 980-4733
Email: clem@harelaw.com


Please serve Defendants by certified mail-return receipt requested as follows:

Resort Conference Centre, Gulf Shores Plantation Condominium Association, Inc.
c/o Crystal Nolan
400 Plantation Road
Gulf Shores, Alabama 36542

Gates Builders, Inc.
c/o Kenneth J. Gates
9153 Hard Drive
Foley, Alabama 36535

Kenneth J. Gates
9153 Hard Drive
Foley, Alabama 36535