## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| FRANKENMUTH MUTUAL | ) | |
| INSURANCE COMPANY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:20-00596-KD-N |
| | ) | |
| GATES BUILDERS, INC., *et al.*, | ) | |
|     Defendants. | ) | |

## REPORT AND RECOMMENDATION

This action is before the Court on the "Motion to Dismiss" (Doc. 26), and separate supporting memorandum (Doc. 29), filed March 15, 2021, by Defendants Kenneth J. Gates and Gates Builders, Inc. (collectively, "the Gates Defendants").[1] The assigned District Judge has referred said motion to the undersigned Magistrate Judge for appropriate action under 28 U.S.C. § 636(a)-(b), Federal Rule of Civil Procedure 72, and S.D. Ala. GenLR 72(a). *See* S.D. Ala. GenLR 72(b); (4/28/2021 electronic reference). In accordance with the Court's briefing schedule (Doc. 31), Plaintiff Frankenmuth Mutual Insurance Company timely filed a response (Doc. 34) in opposition to the motion. Though given the opportunity, the Gates Defendants filed no reply to the response, and the motions is now under submission. Upon due consideration, the undersigned finds that the motion is due to be **GRANTED**, and this action **DISMISSED without prejudice**.

## I.   *Background*

Frankenmuth initiated this civil action by filing a complaint for a declaratory judgment with the Court on April 18, 2019. *See* (Doc. 1); Fed. R. Civ. P. 3. In response

---

[1] Defendant Resort Conference Centre, Gulf Shores Plantation Condominium Association, Inc. did not join in the motion.

to the Court's order directing it to correct certain deficiencies in its allegations demonstrating subject matter jurisdiction (Doc. 6), Frankenmuth filed its Amended Complaint for Declaratory Judgment (Doc. 7),[2] which is currently the operative complaint in this action.[3] The Amended Complaint seeks a declaration of rights as to Frankenmuth's duty to defend and indemnify the Gates Defendants in a civil action pending in the Circuit Court of Baldwin County, Alabama, entitled *Resort Conference Center, Gulf Shores Plantation Condominium Association vs. Gates Builders, Inc.,*

---

[2] "The Declaratory Judgment Act does not, of itself, confer jurisdiction upon the federal courts … Rather, a suit brought under the Act must state some independent source of jurisdiction." *FEC v. Reform Party of U.S.*, 479 F.3d 1302, 1307 n.5 (11th Cir. 2007) (per curiam) (citing *Borden v. Katzman*, 881 F.2d 1035, 1037 (11th Cir. 1989)). However, the amended complaint adequately alleges facts demonstrating jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a). Frankenmuth, a corporation, is deemed a citizen of Michigan because it was both incorporated under that state's law and has its principal place of business there. *See* (Doc. 7 ¶ 1, PageID.264); 28 U.S.C. § 1332(c)(1). Defendant Kenneth Gates is domiciled in, and therefore a citizen of, Alabama. *See* (Doc. 7, ¶ 3, PageID.265); *McCormick v. Aderholt*, 293 F.3d 1254, 1257-58 (11th Cir. 2002) ("Citizenship is equivalent to 'domicile' for purposes of diversity jurisdiction. A person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom." (citations, quotations, and footnote omitted)). Defendants Gates Builders and Resort Conference Centre, Gulf Shores Plantation Condominium Association, Inc., both corporations, are also deemed citizens of Alabama because each was incorporated under that state's law and has its principal place of business there. *See* (Doc. 7 ¶¶ 2, 4, PageID.265); 28 U.S.C. § 1332(c)(1). Frankenmuth also sufficiently alleges that the amount in controversy exceeds $75,000, exclusive of interests and costs. No defendant challenges those allegations, and the undersigned finds no reason to question them *sua sponte* at this time.

[3] "As a general matter, '[a]n amended pleading supersedes the former pleading; the original pleading is abandoned by the amendment, and is no longer a part of the pleader's averments against his adversary.' " *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (*per curiam*) (quoting *Dresdner Bank AG, Dresdner Bank AG in Hamburg v. M/V OLYMPIA VOYAGER*, 463 F.3d 1210, 1215 (11th Cir. 2006) (citation and quotation omitted)). *See also, e.g., Fritz v. Standard Sec. Life Ins. Co. of New York*, 676 F.2d 1356, 1358 (11th Cir. 1982) ("Under the Federal Rules, an amended complaint supersedes the original complaint.").

*Kenneth J. Gates, et al.*, and with the assigned case no. CV-2020-900896 (hereinafter, "the State Court Action"), under a commercial general liability and umbrella insurance policy (Policy No. CPP 666135) (hereinafter, "the Policy").

The relevant facts began on July 26, 2014, when the Resort Conference Centre Owners Association contracted with Gates Builders to perform exterior and structural rehabilitation work at the Resort Conference Center Condominium in Gulf Shores, Alabama. The work was completed in June 2015. After being informed about sagging decks at the Condominium in September 2019, Gates Builders shored up the decks and quoted a repair cost. Gates Builders later applied for insurance with Frankenmuth on April 6, 2020; the following day, Frankenmuth issuing the Policy to Gates Builders.[4]

On July 30, 2020, Defendant Resort Conference Centre, Gulf Shores Plantation Condominium Association, Inc. ("the Condo Association") filed the State Court Action against the Gates Defendants and others, alleging that the work performed at the Resort Conference Center Condominium in 2014 and 2015 was faulty and had damaged the property. The Condo Association's complaint alleges that such damages were discovered in November 2019 and June 2020, and asserts causes of action for negligence, wantonness, breach of warranty, breach of contract/third party beneficiary, misrepresentation and/or suppression, and violation of the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*[5] Frankenmuth is currently

---

[4] While the Amended Complaint includes allegations indicating that Gates Builders may have misrepresented its prior litigation history in its insurance application, none of the counts for declaratory judgment are based on these purported misrepresentations. Accordingly, the undersigned omits discussion of those allegations.

[5] Frankenmuth has attached a copy of the Condo Association's state court complaint

providing a defense to the Gates Defendants under the Policy in the State Court Action under a reservation of rights.

Frankenmuth's complaint seeks a declaration that it does not owe the Gates Defendants either a duty to defend or to indemnify under the Policy in the State Court Action, for the following reasons:

1.  Count I – No coverage is due on claims based on the damages discovered in November 2019 because the Policy does not provide coverage for any loss known by the Gates Defendants to have occurred prior to April 4, 2020, the Policy's inception date.

2.  Count II – No coverage is due on claims based on the damages discovered in June 2020 because they are a continuation of the damages discovered in 2019 and are therefore deemed to have been discovered prior to the Policy's inception date.

3.  Count III – No coverage is due:

    a.  on the Condo Association's negligence claim to the extent that such claim is based on the Gates Defendants' faulty workmanship, as such is not an occurrence under the Policy;

    b.  on the Condo Association's wantonness claim under the Policy's " 'Your Work' Coverage Extension" endorsement, which states the Policy does not cover "property damage" caused by "your work" that results from wanton conduct;

---

as an exhibit to its complaint in this action. (Doc. 1-5); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). *See also See U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015) ("Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage.").

c.  on the Condo Association's breach of warranty claims, as the Policy
    excludes coverage for breach of warranty related to the goods and
    products used by Gates, and because Alabama precedent indicates that
    breach of contract claims are not covered by commercial general liability
    policies;

d.  on the Condo Associations misrepresentation/suppression claims,
    because those actions, standing alone, cannot cause property damage,
    and are therefore not covered under the Policy;

e.  on the Condo Association's Magnuson-Moss claim, because the alleged
    underlying actions do not constitute an occurrence under the Policy; and

f.  on any economic damages claimed by the Association, which do not
    constitute "property damage" covered by the Policy.[6]

## II.   *Analysis*

The Gates Defendants argue that dismissal of this action is warranted under
the Court's discretionary authority to abstain from hearing declaratory judgment
actions in favor of allowing the issues to be resolved in the pending state court
litigation (sometimes called *Brillhart-Wilton* abstention, after the two Supreme
Court cases from which the doctrine derives).

The Declaratory Judgment Act is "an enabling Act, which confers a
discretion on courts rather than an absolute right upon the litigant."

---

[6] While there is no indication that the Condo Association is an insured under the
Policy, it could make a claim on the Policy if it prevails against the Gates Defendants
in the State Court Action. *See Wiggins v. State Farm Fire & Cas. Co.*, 686 So. 2d 218,
220 (Ala. 1996) ("The injured party … can bring an action against the insurer only
after he has recovered a judgment against the insured and only if the insured was
covered against the loss or damage at the time the injured party's right of action
arose against the insured tort-feasor." (quotation omitted)).

*Wilton*[ *v. Seven Falls Co.*], 515 U.S. [277,] 287, 115 S. Ct. 2137[, 132 L. Ed. 2d 214 (1995)] (citations omitted). It only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so. *Brillhart v. Excess Ins. Co. of America,* 316 U.S. 491, 494, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942). In fact,…the Supreme Court has expressed that "it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Id.* at 495, 62 S. Ct. 1173. The Supreme Court has warned that "[g]ratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.* This warning should be heeded.

Guided by the[] general principles expressed by the Supreme Court, as well as the same considerations of federalism, efficiency, and comity that traditionally inform a federal court's discretionary decision whether to abstain from exercising jurisdiction over state-law claims in the face of parallel litigation in the state courts, [the Eleventh Circuit Court of Appeals has] provide[d] the following factors for consideration to aid district courts in balancing state and federal interests.

(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

[This] list is neither absolute nor is any one factor controlling; these are merely guideposts in furtherance of the Supreme Court's admonitions in *Brillhart* and *Wilton*.

*Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330-31 (11th Cir. 2005) (per curiam) (footnotes and some quotation marks omitted).

Frankenmuth devotes substantial brief space to arguing that *Brillhart-Wilton* abstention does not apply because the State Court Action is not a "parallel proceeding." That argument, however, is unavailing. "Although in *Ameritas*, [the Eleventh Circuit] reviewed the district court's discretionary dismissal of a federal declaratory judgment action in the face of a parallel state proceeding—one involving substantially the same parties and substantially the same issues—[the Eleventh Circuit] ha[s] never held that the *Ameritas* factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors … , even [if] the state and federal actions [are] not parallel." *First Mercury Ins. Co. v. Excellent Computing Distribs., Inc.*, 648 F. App'x

861, 866 (11th Cir. 2016) (per curiam) (unpublished) (footnote omitted). *See also City of Fairhope, Ala. v. Charter Oak Fire Ins. Co.*, No. 1:19-CV-117-TFM-B, 2019 WL 10897012, at *7 (S.D. Ala. July 1, 2019) ("the Eleventh Circuit in *Ameritas* did not expressly limit application of the factors to motions for dismissal in light of a parallel state action").

While it does not appear that Frankenmuth has yet been made a party to the State Court Action, there is no indication the Gates Defendants could not bring Frankenmuth into that action as a third-party under Alabama Rule of Civil Procedure 14. Certainly, the Gates Defendants' present motion suggests an intent to bring claims against Frankenmuth in the State Court Action. At present, however, such a move may run afoul of Alabama's abatement statute, under which "[n]o plaintiff is entitled to prosecute two actions in the courts of this state at the same time for the same cause and against the same party. In such a case,…the pendency of the former is a good defense to the latter if commenced at different times." Ala. Code § 6-5-440. "Regarding the operation of § 6-5-440," the Alabama Supreme Court has explained:

> This Code section, by its plain language, forbids a party from prosecuting two actions for the "same cause" and against the "same party." … The phrase "courts of this state,' as used in § 6–5–440, includes all federal courts located in Alabama. This Court has consistently refused to allow a person to prosecute an action in a state court while another action on the same cause and against the same parties is pending in a federal court in this State.  Additionally, a compulsory counterclaim is considered an 'action' for purposes of § 6–5–440…[T]he obligation to assert compulsory counterclaims, when read in conjunction with § 6–5–440, Ala. Code 1975, which prohibits a party from prosecuting two actions for the same cause and against the same

> party, is tantamount to making the defendant with a compulsory
> counterclaim in the first action a 'plaintiff' in that action (for purposes of
> § 6–5–440) as of the time of its commencement. Thus, the defendant
> subject to the counterclaim rule who commences another action has
> violated the prohibition in § 6–5–440 against maintaining two actions
> for the same cause."

*Ex parte Nautilus Ins. Co.*, 260 So. 3d 823, 827 (Ala. 2018) (citations and some quotations omitted) (alterations added). However, the Alabama Supreme Court has also recognized a relevant exception to the abatement rule: "[W]hen a federal court abstains from hearing a case … , that case is not considered as an action being prosecuted, for purposes of § 6–5–440." *Ex parte Norfolk S. Ry. Co.*, 992 So. 2d 1286, 1291 (Ala. 2008).[7] *See also New Hampshire Ins. Co. v. Cincinatti Ins. Co.*, Civil Action No. 1:14-99-CG-N, 2014 WL 5088202, at *7 (S.D. Ala. Oct. 9, 2014) (Granade, J.) ("Although NHIC argues the state action must be abated in favor of this action regardless of whether it is dismissed or stayed…, the Court disagrees. *See Ex parte Norfolk S. Ry. Co.*, 992 So.2d 1286, 1291 (Ala. 2008) (holding that when a federal court abstains from hearing a case, that is not considered an action being prosecuted for purposes of § 6–5–440, and observing respondents would otherwise have no forum

---

[7] In *Norfolk*, the federal court deferred to the later-filed state court action and stayed the federal action under the district court's discretionary abstention authority in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and the full text of *Norfolk*'s holding is: "[W]hen a federal court abstains from hearing a case <u>under the *Colorado River* doctrine</u>, that case is not considered as an action being prosecuted, for purposes of § 6–5–440." *Norfolk*, 992 So. 2d at 1291 (underlined emphasis added). However, *Norfolk* described "the *Colorado River* abstention doctrine" as "a federal court stay[ing] an action when there is an ongoing parallel action in a state court" after "balanc[ing] its obligation to exercise jurisdiction over factors counseling against exercising that jurisdiction[,]" *id.* at 1289 (citing *Moorer v. Demopolis Waterworks & Sewer Bd.*, 374 F.3d 994, 997-98 (11th Cir. 2004) (per curiam)), a description which is readily applied to *Brillhart-Wilton* abstention.

in which to present their claims).") (dismissing under *Brillhart-Wilton* abstention));
*SmartBank v. Pub. Park & Recreation Bd. of Washington Cty.*, No. CV
1:18-00246-KD-N, 2018 WL 6059533, at *9 (S.D. Ala. Oct. 24, 2018) (Nelson, M.J.),
*report and recommendation adopted*, 2018 WL 6055512 (S.D. Ala. Nov. 19, 2018)
(DuBose, C.J.) (similar). Accordingly, should the Court dismiss this declaratory
judgment action under *Brillhart-Wilton* abstention, it would appear that Alabama's
abatement statute would not thereafter bar the Gates Defendants from bring claims
against Frankenmuth in the State Court Action.

*Ameritas* factors 2 and 3 weigh against abstention, as a declaratory judgment
in this action could settle the entire controversy between Frankenmuth and the
Defendants as to what coverage, if any, is owed under the Policy in relation to the
State Court Action, and would therefore serve a useful purpose in clarifying the legal
relations at issue. As to *Ameritas* factor 4, the Gates Defendants complain that
Frankenmuth "filed this declaratory action before notifying [them] of its denial of
coverage…" (Doc. 29, PageID.580). However, that bare fact does not, by itself,
suggest improper "procedural fencing," as there is nothing improper about an insurer
"filing a declaratory action before denying a claim" (*id.*)—indeed, the Supreme Court
has recognized that the Declaratory Judgment Act "allow[s] prospective defendants
to sue to establish their nonliability…" *Beacon Theatres, Inc. v. Westover*, 359 U.S.
500, 504, 79 S. Ct. 948, 3 L. Ed. 2d 988 (1959). Accordingly, *Ameritas* factor 4 also
weighs against abstention. Nevertheless, consideration of the other relevant factors
weighs in favor of abstaining from hearing this declaratory judgment action.

*Ameritas* factors 1 and 9 clearly weigh in favor of abstention, as Alabama state law controls the substantive claims in this action.[8] *See State Auto Ins. Companies v. Summy*, 234 F.3d 131, 136 (3d Cir. 2000), *as amended* (Jan. 30, 2001) ("The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum." (citation and quotation omitted)); *Westchester Surplus Lines Ins. Co. v. Romar House Ass'n, Inc.*, No. CIV.A. 08-0455-WS-M, 2008 WL 5412937, at *2 (S.D. Ala. Dec. 29, 2008) (Steele, J.) (same). These factors are far from controlling, as this Court is routinely called upon to apply Alabama law in diversity cases, and there is no indication that any of the legal issues raised are novel, complex, or unsettled. *Cf. Ameritox, Ltd. v. Millennium Lab'ys, Inc.*, 803 F.3d 518, 540 (11th Cir. 2015) ("Federal courts are (and should be) loath to wade into uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case."). Nevertheless, as will be explained, the claims at issue in this action will turn largely on issues that are anticipated to be developed in the State Court Action.

"An insurance company has two general duties under a policy of insurance: a duty to defend and a duty to indemnify." *Mid-Continent Cas. Co. v. Advantage Med.*

---

[8] "Because this case is brought into federal court based on diversity of the citizenship of the parties, the substantive law of the forum must be applied (including its rules applicable to choice-of-law problems)." *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998) (per curiam). At present, however, no party has given any indication that any law but Alabama's applies to interpretation of the Policy. *See id.* at 1442 ("Foreign law is a fact to be pleaded and proved; and when the contrary is not alleged, the law of the sister state will be assumed to be the same as [the forum state's] law."). Indeed, Count III of Frankenmuth's operative complaint cites primarily to Alabama law in support of the various claims for denying coverage.

*Elecs., LLC*, 196 So. 3d 238, 243 (Ala. 2015).  Frankenmuth has requested a declaratory judgment holding that it owes neither under the Policy for the State Court Action. In Alabama, " '[a]n insurer's duty to defend can be more extensive than its duty to pay.' " *Blackburn v. Fid. & Deposit Co. of Maryland*, 667 So. 2d 661, 668 (Ala. 1995) (per curiam) (quoting *Universal Underwriters Ins. Co. v. Youngblood*, 549 So. 2d 76, 78 (Ala. 1989)). The Alabama Supreme Court has "summarize[d] the law for determining the existence or nonexistence of an insurer's duty to defend" as follows:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence

*Tanner v. State Farm Fire & Cas. Co.*, 874 So. 2d 1058, 1065 (Ala. 2003) (citations omitted). In other words, the "analysis of whether [the insurer] has a duty to supply a defense for [the insured] in [the injured person]'s action against it is two-pronged. First we must determine whether the facts alleged in [the] complaint state an occurrence within the meaning of the policy. Secondly, and presupposing a negative

answer to the first inquiry, we must determine whether the facts which may be proved by admissible evidence state an occurrence." *Hartford Cas. Ins. Co. v. Merchants & Farmers Bank*, 928 So. 2d 1006, 1011 (Ala. 2005) (per curiam) (quotations omitted). This analysis also applies when considering coverage exclusions in a policy. *See Mid-Continent Cas.*, 196 So. 3d at 246-47 ("In the present case Mid–Continent urges us to look no further than the complaint in the South Carolina litigation to confirm the application of the care, custody, or control exclusion. Mid–Continent points to the allegations of the complaint asserting that Advantage 'lost control' and failed to 'maintain proper control' of the CT scanner. Although those allegations certainly imply that Advantage was in some type of control over the scanner, those allegations are not dispositive as to the application of the 'care, custody, or control' exclusion for at least two reasons. First, the complaint does not allege that Advantage exercised the type of exclusive possessory control required to make the exclusion applicable. Second, we are not limited to the bare allegations of the underlying complaint in determining whether an insurer has a duty to defend. *See Hartford*, 928 So. 2d at 1010. An insurer should not be able to evade its obligation to defend by ignoring the facts and relying on incorrect or incomplete allegations in the complaint. Thus, contrary to Mid–Continent's arguments, our analysis must consider the undisputed evidence of Willing's involvement in the incident."); *Cool Temp, Inc. v. Pa. Nat. Mut. Cas. Ins. Co.*, 148 So. 3d 448, 458 (Ala. Civ. App. 2013) (affirming grant of summary judgment in favor of insurer on bad-faith denial of duty to defend where policy exclusion was apparent on

the face of the underlying complaint, and no evidence supported contention the exclusion did not apply).

"Although the bare allegations of the complaint may trigger an insurer's duty to defend its insureds, '[t]he duty to pay ... must be analyzed separately.' " *Porterfield v. Audubon Indem. Co.*, 856 So. 2d 789, 792 (Ala. 2002) (quoting *United States Fid. & Guar. Co. v. Armstrong*, 479 So. 2d 1164, 1167 (Ala. 1985)). "The insured's conduct rather than the allegedly injured person's allegations determine whether the insurer has a duty to indemnify." *Tanner*, 874 So. 2d at 1066. And as was explained in *American National Property & Casualty Co. v. Gulf Coast Aerial, LLC*, No. CV 1:19-00198-KD-N, 2019 WL 4131107, at **2-4 (S.D. Ala. Aug. 29, 2019) (Nelson, M.J.), *report and recommendation adopted*, 2019 WL 4725160 (S.D. Ala. Sept. 26, 2019) (DuBose, C.J.), Eleventh Circuit case law suggests a strong preference for declining to hear duty-to-indemnify declaratory judgment claims where, as here, a final judgment has not yet been entered against the insured.

Count III asserts a variety of grounds for denying coverage for various claims in the State Court Action, based on those claims either not constituting an "occurrence" under the Policy, or falling within one of the Policy's various exclusions. All of the Count III grounds ask the Court to look no further than the face of the state court complaint. However, as was previously noted, even if a complaint does not allege a covered incident on its face, if "the evidence [ultimately] proves one, then the insurer ... owes the duty to defend[,]" *Tanner*, 874 So. 2d at 1065, and the duty to indemnify is determined by "[t]he insured's conduct rather than the allegedly injured

person's allegations…" *Id.* at 1066. Thus, whether Frankenmuth owes a duty to defend or indemnify in the State Court Action will heavily depend on the factual development on the claims in that action (*Ameritas* factor 7), and any fact-finding by this Court on Count III has the potential to "cause friction" with that of the state court in the event opposing conclusions are reached (*Ameritas* factor 5). Moreover, because it will already be adjudicating the underlying claims, the state court is in a better position than this Court to evaluate the issues of coverage raised in Count III (*Ameritas* factor 8).

The claims against coverage in Counts I and II appear to turn on when the Gates Defendants are deemed to have had knowledge of the allegedly defective work at the Condominium, and whether the damages discovered in 2020 are a "continuation" of those discovered in 2019—issues which do not appear particularly relevant to the resolution of any of the Condo Association's state court claims. Thus, factual development in the State Court Action does not appear as important to an informed resolution of those counts, and there appears to be a lesser risk that this Court's fact-finding or conclusions of law on those counts would "cause friction" with that of the state court. Nevertheless, since the state court will already be familiar with the work of the Gates Defendants in evaluating the Condo Association's claims, the state court appears to be in a better position to evaluate those issues as well. Moreover, retaining jurisdiction over Counts I and II while abstaining from hearing Count III, and thus leaving this action pending, may well still prevent the Gates Defendants from bringing claims against Frankenmuth in the State Court Action

due to Alabama's abatement statute. As such, the undersigned finds that the *Ameritas* factors weigh in favor of abstention from hearing this declaratory judgment action.

### III.   *Conclusion & Recommendation*

In accordance with the foregoing analysis, and pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72(b)(1), and S.D. Ala. GenLR 72(a)(2)(S), the undersigned **RECOMMENDS** that the Gates Defendants' March 15, 2021 "Motion to Dismiss" (Doc. 26) be **GRANTED**, that the Court exercise its discretion to decline to hear this declaratory judgment action under *Brillhart-Wilton* abstention, and accordingly **DISMISS** this action in its entirety **without prejudice**, and that final judgment be entered accordingly under Federal Rule of Civil Procedure 58.[9]

**DONE** this the 29th day of April 2021.

/s/ Katherine P. Nelson.
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**

---

[9] While the Condo Association did not similarly move for dismissal, abstention is a prudential consideration that the Court can apply *sua sponte* even if a party has not raised the issue. *See BT Inv. Managers, Inc. v. Lewis*, 559 F.2d 950, 954 n.16 (5th Cir. 1977) ("By its nature, the abstention issue is raised either by a defendant or by the court sua sponte."); *Metro. Prop. & Cas. Ins. Co. v. Butler*, No. 4:15-CV-01244-JEO, 2016 WL 2939633, at *3 (N.D. Ala. May 20, 2016) ("Courts may … apply abstention doctrine even if no party has urged the court to do so.").

## <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within 14 days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.