**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **FRANKENMUTH MUTUAL** ) | |
| **INSURANCE COMPANY** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **CIVIL ACTION NO. 20-00596-KD-N** |
| ) | |
| ) | |
| **GATES BUILDERS, INC.; KENNETH** ) | |
| **J. GATES; and RESORT** ) | |
| **CONFERENCE CENTRE, GULF** ) | |
| **SHORES PLANTATION** ) | |
| **CONDOMINIUM ASSOCIATION, INC.** ) | |
| ) | |
|     **Defendant.** ) | |

## <u>Order</u>

This matter is before the Court on the Motion for Summary Judgment filed by Plaintiff Frankenmuth Mutual Insurance Company (Doc. 54); the Response by Defendants Kenneth J. Gates and Gates Builders, Inc. (Doc. 57); and Plaintiff's Reply (Doc. 58).

## I.    <u>Findings of Fact[1]</u>

Defendant Gates Builders, Inc., an Alabama Corporation, ("Gates") entered into an insurance contract (the "Policy") with Plaintiff Frankenmuth Mutual Insurance Company, a Michigan Corporation, ("Frankenmuth") on April 6, 2020, with a policy period from April 7, 2020 – April 7, 2021 (the "Policy Period"). (Doc. 55-3 at 6). The Policy's coverage included: 1) commercial property, 2) general liability, 3) inland marine, and 4) commercial umbrella. (Doc.

---

[1] The facts are taken in the light most favorable to the non-movant. <u>Tipton v. Bergrohr GMBH–Siegen</u>, 965 F.2d 994, 998–999 (11th Cir. 1992). The "facts, as accepted at the summary judgment stage of the proceedings, may not be the actual facts of the case." <u>Priester v. City of Riviera Beach</u>, 208 F.3d 919, 925 n. 3 (11th Cir. 2000).

55-3 at 6). The Commercial General Liability Coverage (the "Primary Policy") provides in

pertinent part:

**Commercial General Liability Coverage Form:**
**SECTION I - COVERAGES**
**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement**
   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily  injury" or "property damage" to which this insurance applies. **We will have the right and duty to defend the insured against any "suit" seeking those damages**. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. [...]
   b. **This insurance applies** to "bodily injury" and "property damage" **only if:**
      **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
      **(2) The "bodily injury" or "property damage" occurs during the policy period**; and
      **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such"bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
   c. **"Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured** listed under Paragraph **1.** of Section II - Who Is an Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim,includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.
   d. **"Bodily injury" or "property damage" will be deemed to have been known to have occurred** at the earliest time when any insured listed under Paragraph **1.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
      **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
      **(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"**; or
      **(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.**

Doc. 55-3 at 82 (emphasis added).

An endorsement was added that extended coverage to, *inter alia*, include property damage

that was caused by Gates' work on the property:

## "YOUR WORK" COVERAGE EXTENSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

The provisions of this endorsement apply only with respect to "property damage" and "bodily injury" to or resulting from "your work".

**A. SECTION I – COVERAGES, COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. Insuring Agreement, a.** is extended to include damages which you become legally obligated to pay because of "property damage" that is:

(1) To "your work", if the damaged work, or the work out of which the damage arises, was performed on your behalf by a subcontractor; or

(2) To property other than "your work", if the "property damage" is caused by or results from "your work";

if such "property damage":

(1) Consists of physical injury to tangible property, including loss of use of that property; and

(2) Is included within the "products-completed operations hazard".

For use with this endorsement only, "property damage" shall be deemed to be caused by an "occurrence".

However, we will not pay for:

(1) "Property damage" that was a result of willful, wanton or intentional misconduct; or

(2) "Defective or faulty work".

Doc. 55-3 at 80. Pertinent definitions include:

**SECTION V – DEFINITIONS**

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.        …

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

3

**(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

    **(a)** When all of the work called for in your contract has been completed.

    **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

    **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**b.** Does not include "bodily injury" or "property damage" arising out of:

    **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

    **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

    **(3)** Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

**17.** "Property damage" means:

    **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

…

4

21. "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

           **(a)** You;

           **(b)** Others trading under your name; or

           **(c)** A person or organization whose business or assets you have acquired; and    …

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and    …

22. "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

        **(2)** The providing of or failure to provide warnings or instructions.

Doc. 55-3 at 96-97.

The Commercial Liability Umbrella Coverage ("Umbrella Policy") is an excess insurance policy. It contains the same applicable provisions as the Primary Policy referenced *supra*, including that the property damage must be caused by an "occurrence" within the Policy Period. (See Doc. 55-4 at 53-54).

A lawsuit was filed against Gates in the Circuit Court of Baldwin County on July 30, 2020, approximately three months after the policy period commenced – Alabama Docket Number 05-23-2020-900896 styled Resort Conference Centre, Gulf Shores Plantation Condominium Association vs. Gates Builders, Inc. and Kenneth J. Gates (the "Underlying

Lawsuit") – for damages related to Gates' allegedly faulty construction work performed in 2014-2015 on a condominium complex, hereinafter Resort Conference Centre. (Doc. 54 at 4; Doc. 57 at 5). The causes of action in the Underlying Lawsuit's complaint relating to Gates' allegedly faulty construction work include: 1) negligence, 2) wantonness, 3) breach of warranty, 4) breach of contract/third party beneficiary, 5) misrepresentation and/or suppression, and 6) Magnuson-Moss Warranty Act.

The complaint in the Underlying Lawsuit asserts that, on or about November 1, 2019, Resort Conference Centre learned of allegedly faulty repair work performed by Gates in 2014-2015: "balconies and adjacent components of the building were not properly constructed and [] the waterproofing materials and flashings were not properly installed and incorporated into the structure." (Doc. 55-1 at 5-6). Shortly thereafter, Gates provided "emergency shoring to keep the balconies from collapsing." (Doc. 55-1 at 5; Doc. 55-5 at 3). On or about June 11, 2020, following a rain storm, Resort Conference Centre discovered further damages that they attribute to Gates' allegedly faulty repair work from 2014-2015.  Specifically, Resort Conference Centre alleges: "flashings and sealants at the windows and adjacent building components were not properly installed and/or constructed, thereby allowing water intrusion into the cavity of the exterior building envelop causing substantial deterioration of the underlying substrate. It was further discovered at that time that the roof to wall intersections were not properly constructed and the flashing materials were either omitted or improperly installed, thereby causing additional water intrusion…" (Doc. 55-1 at 6). Resort Conference Centre alleges that Gates did not complete the necessary repairs or honor the provided warranty.

Frankenmuth is providing defense to Gates in the Underlying Lawsuit subject to a reservation of rights. Frankenmuth seeks a declaration from this Court that the Policy does not

cover the State Court Plaintiff's (Resort Conference Centre's) allegations and imposes no duty

upon Frankenmuth to defend or indemnify Gates.

## II.    <u>Standard of Review</u>

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R.

CIV. P. 56(a). Rule 56(c) provides as follows:

> ### (c) Procedures
> **(1) Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED.R.CIV.P. Rule 56(c).

The party seeking summary judgment bears the "initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Clark v.

Coats & Clark, Inc.</u>, 929 F.2d 604, 608 (11th Cir. 1991) (quoting <u>Celotex Corp. v. Catrett</u>, 477

U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment.  Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992).

## III.   Applicable Law

The Policy does not contain a choice of law provision. The Policy was issued and delivered to Gates in Alabama. The incident giving rise to the insurance claim occurred in Alabama. Accordingly, Alabama law applies to the interpretation of the policy. See Stovall v. Universal Construction Co., 893 So.2d 1090 (Ala. 2004) ("In a contractual dispute, Alabama law would have us first look to the contract to determine whether the parties have specified a particular sovereign's law to govern. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506 (Ala. 1991). Lacking such a contractual specification, we follow the principle of *lex loci contractus,* applying the law of the state where the contract was formed. Brown, 582 So.2d at 506. That state's law then governs unless it is contrary to the forum state's fundamental public policy. Id. at 506–07.").

Since "general rules of contract law and interpretation govern the interpretation of an insurance policy, Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co., 817 So.2d 687, 691 (Ala. 2001), the [C]ourt must assign the insurance policy its clear and plain meaning and interpret it to give effect to all terms and provisions. See Brewbaker Motors, Inc. v. Belser, 776 So.2d 110, 112 (Ala. 2000); Bd. of Water & Sewer Comm'rs of Mobile v. Bill Harbert Constr. Co., 870 So.2d

699, 710 (Ala. 2003). If an insurance policy is ambiguous, or its meaning is in doubt or uncertain, it is construed against the insurer. Scottsdale Ins. Co. v. National Security Fire and Casualty Ins. Co., 741 So.2d 424, 426, 427 (Ala. Civ. App. 1999)." Cont'l Cas. Co. v. Alabama Emergency Room Admin. Servs., P.C., 623 F. Supp. 2d 1290, 1294 (M.D. Ala.), aff'd, 355 F. App'x 332 (11th Cir. 2009)

Under Alabama law, the question of whether an insurance company owes its insured a duty to provide a defense in proceedings instituted against the insured is determined primarily by the allegations contained in the complaint. See Tanner v. State Farm Fire & Cas. Co., 874 So.2d 1058, 1063 (Ala. 2003); see also Ajdarodini v. State Auto Mut. Ins. Co., 628 So.2d 312, 313 (Ala. 1993) ("An insurance company's duty to defend its insured is determined by the language of the insurance policy and by the allegations in the complaint giving rise to the action against the insured."). "If the allegations of the injured party's complaint show an accident or occurrence which comes within the coverage of the policy, the insurer is obligated to defend regardless of the ultimate liability of the insured." Gunnin v. State Farm and Cas. Co., 508 F.Supp.2d 998, 1002 (M.D. Ala. 2007) (citation omitted). However, in deciding whether the complaint alleges a covered accident or occurrence, "the [C]ourt is not limited to the bare allegations of the complaint in the action against insured but may also look to facts which may be proved by admissible evidence in a suit for declaratory relief." Pac. Indem. Co. v. Run–AFord Co., 161 So.2d 789, 795 (Ala. 1964).

The Alabama Supreme Court summarized the standard that a court should employ to determine the existence or nonexistence of an insurer's duty to defend:

> If the allegedly injured person's complaint against the insured alleges a covered accident or occurrence, then the insurer owes the duty to defend even though the evidence may eventually prove that the gravamen of the complaint was not a covered accident or occurrence. If the complaint against the insured does not, on its face, allege a covered

accident or occurrence, but the evidence proves one, then the insurer likewise owes the duty to defend. The insurer owes no duty to defend only if neither does the complaint against the insured allege a covered accident or occurrence nor does the evidence in the litigation between insurer and insured prove a covered accident or occurrence. If the allegedly injured person's complaint against the insured alleges or the evidence proves not only claims based on a covered accident or occurrence but also claims not based on a covered accident or occurrence, the insurer owes a duty to defend at least the claims based on a covered accident or occurrence.

*5 Tanner, 874 So.2d at 1065 (internal citations omitted).

If it is determined that there is no duty to defend, then there is no duty to indemnify. See Trailer Bridge, Inc. v. Illinois Nat. Ins. Co., 657 F.3d 1135, 1146 (11th Cir. 2011) ("[A] court's determination that the insurer has no duty to defend requires a finding that there is no duty to indemnify.") (citations omitted); see also Essex Ins. Co. v. Foley, 827 F. Supp. 2d 1326, 1331 (S.D. Ala. 2011) ("After all, as recent Eleventh Circuit precedent confirms, a judicial determination of no duty to defend compels a finding of no duty to indemnify."). With these principles in mind, the Court will address whether the facts alleged in the complaint filed in the Underlying Lawsuit state an "occurrence" of "property damage" within the Policy's coverage period to which the Policy extends coverage.

## IV.   Analyses

### A.  Burden of Proof

Gates argues the burden of proof is on Frankenmuth. (Doc. 57 at 20). However, the insured bears the initial burden of proving that a claim is covered under an insurance policy. See Z.C. v. Progressive Specialty Ins. Co., 189 F. Supp. 3d 1307, 1311 (N.D. Ala. 2016) ("[U]nder Alabama law the insured bears the initial burden of proving that a particular claim or occurrence falls within coverage under the insurance policy."); see also DiBenedetto v. Allstate Ins. Co., 469 F. Supp. 3d 1243, 1246–47 (N.D. Ala. 2020) ("In coverage disputes, the insured bears the burden of proving coverage exists.") (citing Jordan v. Nat'l Acc. Ins. Underwriters Inc., 922 F.2d 732,

735 (11th Cir. 1991)).  And while the insurer bears the burden of demonstrating that an exclusion

precludes coverage for a claim, Jordan, 922 F.2d at 735 (11th Cir. 1991) ("[W]hen an insurer

denies coverage based on an exclusionary clause it bears the burden of proving the applicability

of that exclusion."), Frankenmuth has not invoked any exclusions in the policy.

### B. Whether the June 11, 2020, Damages were an Occurrence during the Policy Period

The Policy at issue defines an "occurrence" as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." (Doc. 55-3 at 96). The

Policy only applies to "occurrences" of "property damage" that occur during the Policy Period.

(Doc. 55-3 at 82). And, per the Policy, if any insured "knew, prior to the policy period, that the []

'property damage' occurred, then any continuation, change or resumption of such [] 'property

damage' during or after the policy period will be deemed to have been known prior to the policy

period." (Doc. 55-3 at 82).

Frankenmuth argues that they have no duty to defend Gates in the Underlying Lawsuit

because Resort Conference Centre's damages occurred prior to the Policy Period (which

commenced on April 7, 2020). (Doc. 54 at 14). Specifically, Frankenmuth argues the complaint

in the Underlying Lawsuit asserts that damages relating to Gates' construction work in 2014-

2015, or the "property damage" occurred, on or about November 1, 2019, the date water

intrusion damage to the balconies was discovered. (Doc. 54 at 15-16). Frankenmuth further

argues that the damage from the water intrusion through the windows, discovered by Resort

Conference Centre on June 11, 2020, was not a new "occurrence."  Frankenmuth argues that

"each condo structure experienced continuous exposure to the same harmful condition – repeated

exposure to water…" which was proximately caused by the improper construction work by

Gates. (Doc. 54 at 17; Doc. 58 at 7) (citing Barton v. Nationwide Mutual Fire Ins. Co., 2020 WL

759057 at 7* (N.D. Ala. Feb. 14, 2020) ("[T]he 'accident' which is the 'occurrence' is the repeated exposure to water and moisture caused by the improperly constructed dormers and windows."). Thus, Frankenmuth asserts the water damage to the substrate discovered by Resort Conference Centre on June 11, 2020, was not a new "occurrence" during the Policy Period, but a continuation of the "property damage" discovered on November 1, 2019. (Doc. 54 at 20)

Gates responds that the Policy covers any continuation of damages that occur during the Policy Period, regardless of when the damage first occurred. (Doc. 57 at 19). In support, Gates relies on the definition of occurrence: "an accident, including continuous or repeated exposure to substantially the same general harmful conditions" and argues that the word "continuous" supports his contention.   The Court disagrees.  This definition merely explains that an occurrence can also be non-sudden and accrue over time.  However, this does not change the fact that for property damage to be covered it must result from: 1) an occurrence; 2) that occurs during the policy period; and 3) was not known to the insured prior to the policy period.

Gates also points to the following provisions in support: "[if an insured knew of property damage] prior to the policy period, then any continuation, change or resumption of such … 'property damage' will be deemed to have been known prior to the policy period[]" and "property damage will be deemed to have been known to have occurred at the earliest time when the insured … [reports property damage, receives a claim for property damage, or becomes aware property damage has begun to occur]. (Doc. 57 at 19; Doc. 55-3 at 82). However, these provisions only indicate when Gates is charged with <u>knowledge</u> of property damage (requirement #3, *supra*) – they do not alter requirements #1 (an occurrence) and #2 (occurring within the policy period).

12

Next, Gates argues that under the Commercial General Liability Policy endorsement ("Your Work" Coverage Extension – Section A), the definition of "product-completed operation hazard" expands coverage to "all" property damage arising out of Gates' work, if it is discovered by Gates during the Policy Period. Gates states that "under this endorsement, the damaged work does not need to occur during the CGL Policy Period." (Doc. 57 at 20).  Gates is incorrect.  The endorsement expands the coverage to include damages caused by Gates' work, but it does not change the three requirements that must be met for the insurance to apply. See supra.

Gates also argues that the Umbrella Policy applies to "any" suit seeking damages to which the Commercial General Liability Policy does not apply. (Doc. 57 at 22; Doc. 55-4 at 53). Again, Gates is incorrect. The Umbrella Policy includes the same three prerequisites to coverage as the CGL Policy. (See, Doc. 55-4 at 53).

Gates next contends that an intervening circumstance, i.e., the "storm event," broke the chain of causation and created more than one occurrence, and thus "the damages discovered on or about June 11, 2020, constitute a new 'occurrence.'" (Doc. 57 at 23) (citing United States Fire Ins. Co. v. Safeco Ins. Co., 444 So.2d 844, 846-47 (Ala. 1983)) (Repairer's failure to properly tarp a self-induced hole in roof prior to a rain storm resulting in water damage was an intervening circumstance, negligence, that broke the chain of causation from initial damages stemming from the prior condition of the leaking roof.).

In Safeco, "water had leaked through the roof of a building, damaging the merchandise of the lessee occupying the building. Subsequently, the lessee sustained additional damages by rainfall when the roofing company working on the roof failed to effectively cover a portion of the roof on which it was working… [T]he court then determined that two separate occurrences

13

had taken place, because the additional damage was caused by a 'separate, intervening cause' (the negligence of the roofing crew) rather than the prior condition of the roof. Id. at 847.  Unlike the current case, the two instances of water damage were found to be easily distinguishable in time and space. Id. In sum, the initial water damage was caused by the 'occurrence' of the leaky roof, and the later damage was caused by the 'occurrence' of the negligence of the roofing crew." City of Mobile, 749 F.2d 659, 662 (11th Cir. 1984).

The facts of this case are distinguishable from those of Safeco. Unlike in Safeco, there was not a clear or established intervening circumstance that broke the chain of causation for the sustained property damage.  It is alleged in the underlying complaint that the property damage discovered in November 2019 and June 2020 was proximately caused by the construction work Gates performed in 2014-2015.   There is no allegation, or evidence, that the storm event was the originating proximate cause of the damage, only that the storm event revealed the damage. Accordingly, Safeco does not dictate the resolution of the issue.

Here, Resort Conference Centre alleges that it incurred damage to the balconies, discovered on November 1, 2019, as a result of Gates' 2014-2015 construction work.  The damage to the balconies is clearly outside the Policy Period.  The issue is whether the damage discovered in June 2020 to the windows and underlying substrate was an independent occurrence obligating Frankenmuth to provide a defense to Gates in the Underlying Lawsuit.

The Alabama Supreme Court "has stated that 'as a general rule the time of an "occurrence" of an accident within the meaning of an indemnity policy is not the time the wrongful act is committed but the time the complaining party was actually damaged.' United States Fidelity & Guaranty Co. v. Warwick Development Co., 446 So.2d 1021, [1024] (Ala. 1984)." Liberty Mut. Ins. Co. v. Wheelwright Trucking Co., 851 So. 2d 466, 481 (Ala. 2002).

"As a practical matter, this general rule means 'the insurance that is in force at the time of the property damage ... is applicable rather than insurance that was in force when the work was performed.'" Essex Ins. Co. v. J & J Masonry LLC, 2015 WL 1499120, at *2 (N.D. Ala. Apr. 1, 2015) (citations omitted).

In determining whether Frankenmuth owes a duty to defend Gates for the damages discovered on June 11, 2020, "the salient question is whether there has been 'but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage,' *i.e.*, one occurrence, or whether the initial cause was 'interrupted or replaced by another cause' such that there were two or more occurrences." Nationwide Mut. Ins. Co. v. Gibson, 2009 WL 10687856, at *8 (N.D. Ala. Sept. 1, 2009 (internal quotations and citations omitted). "If the chain of causation was not broken, a single occurrence extends to encompass *all* of the damage proximately resulting from it." Id. "Thus, a single occurrence may result in multiple injuries to multiple parties over a period of time; but if one cause is interrupted and replaced by another intervening cause, the chain of causation is broken and more than one occurrence has taken place." Home Indem. Co. v. City of Mobile, 749 F.2d 659, 662 (11th Cir. 1984) (citing Safeco, 444 So.2d at 846-47).

Here, there is a lack of information in the Underlying Lawsuit's complaint to determine whether the property damage suffered by Resort Conference Centre was proximately caused by the same occurrence. The complaint asserts that **prior** to the Policy Period it was "discovered that balconies and adjacent components of the building were not properly constructed and [] the waterproofing materials and flashings were not properly installed and incorporated into the structure," and, "[u]pon further investigation it was discovered that the majority, if not all the balconies, were constructed in an improper manner, thus, causing substantial deterioration of the

15

building components which will require significant remediation." (Doc. 55-1 at 4-5).  And, **during** the Policy Period "it was discovered that: flashings and sealants at the windows and adjacent building components were not properly installed and/or constructed, thereby allowing water intrusion into the cavity of the exterior building envelope causing substantial deterioration of the underlying substrate. It was further discovered … that the roof to wall intersections were not properly constructed and that the flashing materials were either omitted or improperly installed, thereby causing additional water intrusion into the cavity of the building envelope resulting in substantial consequential damage to the structures." (Doc. 55-1 at 5).

Initially, the Court is not convinced by Frankenmuth's argument that there is only one occurrence solely because the damages to the balconies and the damages to windows/substrate are alleged to have been caused by Gates' 2014-15 construction work.   Taken to its logical end, accepting this argument would require that any faulty work (resulting in damages) that Gates performed to any part of the condos would be excluded from coverage, merely because the balcony defects occurred outside the policy period.   There is nothing in the contract that limits coverage in this manner.

Rather, to find that there was only one occurrence, the evidence must show that the faulty construction that caused the balcony damage is the same type of faulty construction that caused the damage to the substrate.  However, the allegations of the complaint are insufficiently detailed to make this determination.  And, no evidence has been provided to the Court which explains in detail the alleged faulty construction work that caused the damages. In other words, this issue is not ripe for summary judgment determination.

**C.  Which Claims in Underlying Lawsuit are covered by the Policy (assuming an occurrence within the policy period)?**

    **i.   Negligence and Wantonness Claims**

The complaint in the Underlying Lawsuit alleges that Gates negligently (Count 1) and wantonly (Count 2) performed construction work in 2014-2015. The negligence and wantonness claims contain nearly identical allegations in the complaint. See Doc. 55-1 at 6-10. Frankenmuth argues that the Policy does not provide coverage to the extent the negligence and wantonness claims are based upon faulty workmanship. (Doc. 54 at 27). In support, Frankenmuth asserts that the "claims for faulty and defective workmanship do not constitute an 'occurrence' necessary to trigger coverage," because the Policy only applies to property damage caused by an "occurrence" and an "occurrence" under the Policy is defined as "an accident." (Doc. 54 at 28). This argument has merit, as the Supreme Court of Alabama has interpreted the word "'accident' in the insurance context to mean '[a]n unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could [not] be reasonably anticipated.' Hartford Cas. Ins. Co. v. Merchs. & Farmers Bank, 928 So.2d 1006, 1011 (Ala. 2005) (internal quotation marks omitted). Put differently, an accident refers to "something unforeseen, unexpected, or unusual.'" Pennsylvania Nat. Mut. Cas. Ins. Co. v. Snider, 607 F. App'x 879, 882 (11th Cir. 2015). And, the Supreme Court of Alabama has noted "**faulty workmanship itself** is not 'property damage' 'caused by' or 'arising out of' an 'occurrence.'" Owners Ins. Co. v. Jim Carr Homebuilder, LLC, 157 So. 3d 148, 155 (Ala. 2014) (emphasis added).

However, Frankenmuth argues further that (assuming the occurrence was within the policy period) "claimed damages to other portions of the structure, not included in the work undertaken by the contractor or to personal property" would be covered under the Policy, but that

the complaint in the Underlying Lawsuit does not specifically allege resulting damage. (Doc. 54 at 28). Gates responds that there are allegations of damage to other portions of the building resulting from the alleged defective work by pointing to ¶ 20(b) of the complaint: "consequential damage to the buildings and damage to other property resulting from said defects." (Doc. 57 at 27).

The Court agrees with Gates that there are allegations of damages to other portions of Resort Conference Centre, as the negligence and wantonness claims in the complaint expressly state that there is "damage to the buildings and damage to other property resulting from said defects in [Gates' work]." (Doc. 55-1 at 7). And, as both Frankenmuth and Gates argue in their briefs, faulty work that creates a condition that damages other portions of the underlying structure are covered under the Policy. (Doc. 54 at 28; Doc. 57 at 28); Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par., 790 F.3d 1173, 1180 (11th Cir. 2015) ("[A] claim for damage resulting from a condition caused by the contractor's faulty work may arise out of an accident and be covered as an occurrence."). Thus, Frankenmuth has not satisfied its burden as the movant on summary judgment and the issue of whether there is a duty to defend the negligence and wantonness claims in the Underlying Lawsuit remains for trial.

### ii.      Breach of Warranty

The complaint in the underlying lawsuit contains a claim for breach of warranty (Count 3). (Doc. 55-1 at 10). And, as Frankenmuth argues and the Court agrees, the Policy does not provide coverage for warranties made by the insured for their work: "This insurance does not apply to: … k. Damage to Your Product…" and the definition of "Your Product" includes "Warranties or representations." (Doc. 55-3 at 86, 97). Accordingly, Frankenmuth is not obligated to provide coverage to Gates for the breach of warranty claim in the Underlying Lawsuit. See, e.g., Townsend Ford, Inc. v. Auto-Owners Ins. Co., 656 So. 2d 360, 364–65 (Ala.

1995) ("Insurers can plainly provide in their policies that coverage for breach of warranty claims is excluded if they so choose."); see also Owners Ins. Co. v. MG Squared, Inc., 2006 WL 8437041, at *7 (N.D. Ala. Jan. 20, 2006) ("[T]he court finds that there is no coverage for warranty claims under the plain language of exclusion (k) of the Policy, which excludes 'property damage' to 'your product.'").  Therefore, no defense or coverage is owed for this claim as a matter of law.

### iii.    Breach of Contract/Third Party Beneficiary

Count four (4) of the Underlying Lawsuit is a breach of contract/third party beneficiary claim. (Doc. 55-1 at 11). Frankenmuth argues that a breach of contract claim is not an "occurrence" under the Policy and thus no coverage is owed to Gates. Gates argues, without any legal citations, that the breach of contract claim is an "occurrence" under the Policy and thus coverage is owed.

Under Alabama law, a breach of contract "*may* constitute an 'occurrence' for purposes of policy language similar to that of [Frankenmuth's] policy, so long as the breach of contract … actually caused bodily injury or property damage." Sellers v. Nationwide Mut. Fire Ins. Co., 2021 WL 3055406, at *5 (N.D. Ala. July 20, 2021) (citing St. Catherine of Siena Parish, 790 F.3d 1173, 1179 (11th Cir. 2015) (interpreting Alabama law and finding that a breach of contract may constitute an "occurrence" so long as the breach of contract resulted in property damage). "[I]n determining whether there is coverage, the court should look to the specific 'kind of … claim' being asserted, regardless as to whether it is labeled a contract claim, a tort claim, or whatever, and the 'purpose of the general liability policy' from which coverage is sought." Auto-Owners Ins. Co. v. Toole, 947 F. Supp. 1557, 1564 (M.D. Ala. 1996) (citations omitted).

Here, the purpose of the Policy is to protect Gates from "occurrences," or accidents, that result in "property damage." (Doc. 55-3 at 82). The factual underpinnings of the breach of contract claim is Gates alleged failure to fulfill contractual obligations owed to Resort Conference Centre. As the insured, Gates has failed to satisfy the burden of proof for demonstrating that the alleged breach of contract was an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" that resulted in "property damage." (Doc. 55-3 at 96); see also DiBenedetto 469 F. Supp. 3d 1243, 1246–47 (N.D. Ala. 2020) ("In coverage disputes, the insured bears the burden of proving coverage exists.). Gates did not address how the breach of contract claim constitutes an "occurrence" as defined in the Policy. Nor did Gates cite to or provide any evidence explaining or showing how the breach of contract caused "property damage." See, e.g., Gibson, 2009 WL 10687856, at *11 (N.D. Ala. Sept. 1, 2009) (Breach of contract claim for defective repair work was not an "occurrence" under general liability policy.). Accordingly, Frankenmuth is not obligated to provide a defense or coverage to Gates for the breach of contract claim.

### iv.    Misrepresentation and/or Suppression

Count five (5) of the Underlying Lawsuit is a misrepresentation and/or suppression claim. Frankenmuth argues that the misrepresentation claim is not an "occurrence" under the Policy. The Court agrees, as "[f]raudulent misrepresentation cannot be considered an 'occurrence' involving accidental injury or property damage." Assurance Co. of Am. v. Admiral Ins. Co., 2011 WL 1897589, at *5 (S.D. Ala. May 18, 2011); see also U.S. Fid. & Guar. Co. v. Warwick Dev. Co., 446 So. 2d 1021, 1023 (Ala. 1984) (Supreme Court of Alabama held that a misrepresentation was not considered an occurrence, and even if it were considered an occurrence then the misrepresentation did not cause the property damage.).

20

"In <u>Thorn v. American States Ins. Co</u>*,* 266 F.Supp.2d 1346 (M.D. Ala.2002) (Thompson, J.), *aff'd,* 66 Fed. Appx. 846 (11th Cir. 2003) (unpublished), [the Middle District of Alabama] discussed whether [fraudulent misrepresentation], either intentional or negligent, is an 'occurrence' under a general liability insurance policy. There, the fraud counts essentially asserted claims arising out of a business dispute … The court stated that extending coverage to fraud claims would be improper because 'the policy ... was clearly designed to protect the plaintiffs from liability for essentially accidental injury to another person, or property damage to another's possessions.' <u>Id</u>*.* at 1352. The court explained that, 'To allow coverage here would have the effect of transforming [the insurance company] into "a sort of silent business partner" to the consumer transactions between the [ ] plaintiff and [the defendant].' *Id.* at 1352 (quotation and citation omitted), and '[t]his would cause an "enormous" expansion of the scope of the insurer's liability without corresponding compensation,' *id.*" <u>Hermitage Ins. Co. v. Champion</u>, 2010 WL 1711049, at *4 (M.D. Ala. Apr. 27, 2010) (Finding that misrepresentation, whether negligent or intentional, did not constitute an "occurrence" under general liability policy.)

Gates did not meet its burden for proving that the alleged misrepresentation is an "accident, including continuous or repeated exposure to substantially the same general harmful conditions" that resulted in "property damage". (Doc. 55-3 at 96); <u>see, e.g., Champion</u>, 2010 WL 1711049, at *5 (M.D. Ala. Apr. 27, 2010) ("Because [the insured] does not meet its burden of demonstrating how the alleged [misrepresentation] is an 'an accident, including continuous or repeated exposure to substantially the same general harmful condition,' Pl.'s Ex. A at 14, there is no coverage for this claim."). Thus, Frankenmuth is not obligated to provide a defense or coverage to Gates for the misrepresentation claims.

**v.      Magnuson-Moss Warranty Act**

Count six (6) of the complaint in the Underlying Lawsuit is a claim for a Magnuson-Moss Warranty Act violation. (Doc. 55-1 at 14). Frankenmuth argues that Gates is not entitled to coverage for the Magnuson-Moss Warranty Act claim because the violation was not accidental or an "occurrence" under the Policy. Gates argues they're entitled to coverage for the Magnuson-Moss Warranty Act claim since the complaint allegedly states an "occurrence" pursuant to the Policy and Frankenmuth has not proved that an exclusion applies. (Doc. 57 at 26).

Again, as discussed *supra*, the insured bears the burden to prove that coverage applies. Gates conclusory statement, without more, that an "occurrence" took place under the Policy without citing to language in the Policy or specific facts pertaining to the Magnuson-Moss Warranty Act claim that constitute an "occurrence" is insufficient and does not satisfy the burden for demonstrating that a duty to defend on this claim is owed. Accordingly, as a matter of law Frankenmuth does not have the duty to defend or provide coverage for this claim.

## V.     Failure to Respond

Frankenmuth argues that it has met its burden of proof; Resort Conference Centre failed to satisfy its burden under F.R.C.P. Rule 56(e) by not responding to the motion for summary judgment; Resort Conference Centre's failure to respond constitutes an abandonment; and summary judgment is therefore due to be granted to Frankenmuth. (Doc. 58 at 2-3). However, "[t]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Property, 5800 S.W. 4th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004). Specifically, per the Eleventh Circuit:

> ... the district court need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted, but must ensure that the motion itself is supported by evidentiary materials ... At the least, the district court must review all of the evidentiary materials submitted in support of the motion for summary

judgment..... In addition, so that there can be an effective review of the case on appeal, the district court's order granting summary judgment must [ ] indicate that the merits of the motion were addressed....

Id.

Resort Conference Centre's failure to respond does not automatically obligate the Court to enter summary judgment against them. Id. And, as discussed *supra*, Frankenmuth is not owed summary judgment on all of the claims.

## VI.    Conclusion

Plaintiff Frankenmuth Mutual Insurance Company's Motion for Summary Judgment is **DENIED in part and GRANTED in part**.

**THE PRE-TRIAL CONFERENCE SCHEDULED FOR June 9, 2022 at 11:30 a.m. will be held telephonically.  Details regarding a call-in number will be emailed to counsel.**

**THE BENCH TRIAL WILL BE HELD ON JULY 18-19, 2022, beginning at 8:30 a.m in Courtroom 4B.**

**DONE** and **ORDERED** this the 3rd day of **May 2022.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**UNITED STATES DISTRICT JUDGE**